# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 14-286 |
| | ) | Judge Nora Barry Fischer |
| JULIO SEGURA, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

I.  INTRODUCTION

In this case, Defendant Julio Segura, Jr. is charged in a one count Indictment with a violation of 18 U.S.C. § 871(a) for allegedly sending a threatening communication to the President of the United States on September 22, 2014, stating that "I will hunt you down. I will find you. I will kill you." (Docket No. 1). Defendant has moved to dismiss the Indictment under Rule 12(b)(2) of the Federal Rules of Criminal Procedure, arguing that the decision in *Elonis v. United States*, 135 S. Ct. 2001 (2015), which was issued after the grand jury's return of the Indictment, changed the essential elements of the 871(a) offense, such that the Indictment, as presently pled, fails to state an offense. (Docket Nos. 41, 51). The Government counters that the Indictment meets the pleading standards required under Third Circuit law and that any changes in the law due to the intervening decision in *Elonis* may be addressed by the Court through its instructions to the jury. (Docket No. 47).

The motion has been fully briefed and the Court heard argument from the parties at a motion hearing held on March 24, 2016. (*See* Docket Nos. 41; 47; 51; 53). The parties declined the Court's invitations to purchase the transcript and to submit supplemental briefs. (Docket No.

1

53). For the following reasons, upon consideration of the parties' arguments and the allegations contained in the Indictment, Defendant's Motion to Dismiss the Indictment [41] is denied.

II. BACKGROUND

   *a. Charge in the Indictment*

On December 16, 2014, a federal grand jury returned a one count indictment against the Defendant, charging him with violating 18 U.S.C. § 871(a). (Docket No. 1). The Indictment specifically alleges that:

> [o]n or about September 22, 2014, in the Western District of Pennsylvania, the Defendant, Julio Segura, Jr., did knowingly and willfully deposit for conveyance in the mail, and for a delivery from a post office and by a letter carrier, a letter, paper, writing, print, missive, and document containing a threat to take the life of, and to inflict bodily harm upon the President of the United States, specifically, a letter which stated "I will hunt you down. I will find you. I will kill you." In violation of Title 18, United States Code, Section 871(a).

(Docket No. 1). The relevant portion of section 871(a) provides that

> [w]hoever knowingly and willfully deposits for conveyance in the mail or for a delivery from any post office or by any letter carrier any letter, paper, writing, print, missive, or document containing any threat to take the life of, to kidnap, or to inflict bodily harm upon the President of the United States, [ …], or knowingly and willfully otherwise makes any such threat against the President, [ …], shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 871(a). The penalties for violating 18 U.S.C. § 871(a) include any or all of the following: a term of imprisonment of not more than five years; a term of supervised release of not more than three years; a fine of not more than $250,000; and, a mandatory special assessment of $100. (Docket No. 2).

b. *Relevant Procedural History*

After the grand jury's return of the Indictment, Defendant was granted numerous extensions of time to file pretrial motions, extending the time period for the filing of any such motions from February 13, 2015 through February 23, 2016.[1] (Docket Nos. 17, 24, 26, 28, 36, 38, 40, 45). Defendant filed two pretrial motions on February 23, 2016: the instant motion to dismiss; and a motion in limine seeking disclosure of any Rule 404(b) evidence that the Government intends to present at trial. (Docket Nos. 41, 42). The Government filed its responses to these motions on March 8, 2016. (Docket Nos. 47, 48). The Court entered an Order on March 9, 2016 denying the Rule 404(b) motion, as premature and without prejudice, to Defendant renewing his position on the prior bad act evidence pursuant to deadlines for same to be established by the Court in its Pretrial Order. (Docket No. 49). As to the motion to dismiss, Defendant was granted an extension of time to file a reply, which he then filed with the Court on March 23, 2016. (Docket Nos. 51, 52).

The Court held oral argument on the next day, i.e., March 24, 2016. (Docket No. 53). At the time of the hearing, the parties agreed that no further briefing of this particular motion was necessary and no additional briefs have been submitted. (*Id.*). Accordingly, as all of the submissions from the parties have been received and considered by the Court, the pending motion to dismiss is ripe for disposition.

III. LEGAL STANDARD

Motions to dismiss are governed by Rule 12 of the Federal Rules of Criminal Procedure. FED. R. CRIM. P. 12. Specifically, Rule 12(b)(3)(B) provides that "at any time while the case is

---

[1] During this intervening time period, the Court granted motions filed by Defendant which were unopposed by the Government requesting that the Probation Office complete a Pre-Plea Presentence Investigation Report, (*see* Docket Nos. 27, 28), and that he be brought into primary federal custody as he was initially being held by state authorities on state charges, (*see* Docket Nos. 32, 34). The Pre-Plea Presentence Investigation Report was provided to the parties on September 21, 2015. (Docket No. 33).

3

pending, the court may hear a claim that the indictment or information fails to . . . state an offense." FED. R. CRIM. P. 12(b)(3)(B). The requirements of the contents of an indictment are set forth in Rule 7 of the Federal Rules of Criminal Procedure. FED. R. CRIM. P. 7. Pursuant to Rule 7(c)(1), an indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." FED. R. CRIM. P. 7(c)(1). The purpose of the promulgation of Rule 7 was to abolish detailed pleading requirements and the technicalities previously required in criminal pleading. *See United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012) (citing *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007)); *see also United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (same citation). "Although detailed allegations may have been required under a common law pleading regime, they 'surely are not contemplated by [the Federal Rules].'" *Huet*, 665 F.3d at 594 (quoting *Resendiz-Ponce*, 549 U.S. at 110).

As to the sufficiency of an indictment, the United States Court of Appeals for the Third Circuit has held that:

> [A]n indictment [is] sufficient so long as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.' *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007) (internal quotation marks omitted). Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.' *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989).

*Bergrin*, 650 F.3d at 264 (quoting *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007)). "Generally, an indictment will satisfy these requirements where it informs the defendant of the

4

statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *Huet*, 665 F.3d at 595 (citing *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)).

> In determining whether an indictment validly states the elements of the offense, we need not blindly accept a recitation in general terms of the elements of the offense. *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). "Federal Rule of Criminal Procedure 12(b)(3)(B) allows a district court to review the sufficiency of the government's pleadings to ... ensur[e] that legally deficient charges do not go to a jury." *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011). Although the Government is not required to set forth its entire case in the indictment, "if the specific facts" that are alleged "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," the indictment fails to state an offense. *Panarella*, 277 F.3d at 685; *see United States v. Schiff*, 602 F.3d 152, 162–66 (3d Cir. 2010) (finding that indictment alleging "failure to rectify misstatements of others" did not, as a matter of statutory interpretation, state an offense under 18 U.S.C. § 78j(b) and SEC Rule 10b–5). However, the scope of a district court's review at the Rule 12 stage is limited. "[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence." *United States v. DeLaurentis*, 230 F.3d 659, 660 (3d Cir. 2000) (citations omitted). "The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." *Id.* at 661. There is no criminal corollary to the civil summary judgment mechanism. *Id.* In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment. *United States v. Sampson*, 371 U.S. 75, 78–79, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). "Evidentiary questions—such as credibility determinations and the weighing of proof—should not be determined at this stage." *Bergrin*, 650 F.3d at 265 (internal marks and citation omitted). Thus, a district court's review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury could find that the defendant committed the offense for which he was charged. *Panarella*, 277 F.3d at 685; *DeLaurentis*, 230 F.3d at 660.

*Huet*, 665 F.3d at 595-96.

5

IV.  DISCUSSION

Defendant's attack on the grand jury's Indictment contains several layers. (Docket Nos. 41, 51). Essentially, he argues that: the Indictment fails to allege any *mens rea* with respect to the intent to threaten element alleged in the second clause of the Indictment; the Supreme Court's subsequent decision in *Elonis* requires that the *mens rea* for the intent to threaten element involves a subjective intent to threaten; the Government likely provided instructions to the grand jury based on the Court of Appeals prior decision in *United States v. Kosma*, 951 F.2d 549 (3d Cir. 1991), which set forth an objective standard for the intent to threaten element; and, the Indictment must be dismissed given such erroneous instructions to the grand jury resulting in the language utilized in the Indictment. (*Id.*). The Government counters that *Elonis* involved a charge under a different statute, 18 U.S.C. § 875(c), that lacked any statement of the applicable *mens rea* whereas the charging statute here, § 871(a), contains the "knowingly and willfully" *mens rea* that is included in the Indictment. (Docket No. 47). The Government otherwise contends that any change in the law as to § 871(a) occasioned by *Elonis* should be resolved by the Court in the context of its own instructions to the jury in Defendant's case. (*Id.*). Having fully considered the parties' arguments, the Court agrees with the Government's position and will deny the motion to dismiss. The Court reaches this result for several reasons.

At the outset, the sufficiency, or lack thereof, of any legal instructions provided by the prosecutor to the grand jury is beyond this Court's scope of review on a Rule 12(b)(3) motion to dismiss, as is outlined above. Again, in evaluating its sufficiency, this Court's task is to interpret the language of the four corners of the Indictment. *See Vitillo*, 490 F.3d at 321 (a "challenge to the sufficiency of the indictment should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it."). Hence, matters external to the

Indictment, including any legal instructions provided to the grand jury, cannot be considered by the Court at this stage of the litigation. *See Huet*, 665 F.3d at 595-96.

Defendant also argues that "[t]his Indictment provides no assurance that the grand jury found probable cause as to the subjective intent element" due to the purported change in the law. (Docket No. 51 at 5). But, this Court has only very narrow supervisory authority to review grand jury proceedings and a criminal defendant bears a "heavy burden," *see United States v. Kubini*, 19 F. Supp. 3d 579, 615 (W.D. Pa. May 13, 2014), to demonstrate that that a violation was committed by the prosecutor and that such "violation substantially influenced the grand jury's decision to indict or [that] there is grave doubt that the decision to indict was free from the substantial influence of such violation." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255–56 (1988) (citing *United States v. Mechanik*, 475 U.S. 66 (1986)). As this Court recognized in *Kubini*:

> the Supreme Court has declined to permit courts to invoke their supervisory powers to adjudicate challenges to the following well settled constitutional protections which are afforded to defendants in a trial setting:
>
> • the refusal of the government to present substantial exculpatory evidence, [*see United States v. Williams*, 504 U.S. 36, 50, 112 S.Ct. 1735 (1992)];
>
> • the introduction of evidence obtained in violation of a defendant's Fourth Amendment rights, *see United States v. Calandra*, 414 U.S. 338, 349, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974);
>
> • the admission of evidence secured in violation of a defendant's Fifth Amendment rights against self-incrimination, *see id.* at 346, 112 S.Ct. 1735; and,
>
> • the return of an indictment predicated on hearsay evidence in violation of the Rules of Evidence, [*see United States v. Costello*, 350 U.S. 359, 364, 76 S.Ct. 406 (1956)].

*Kubini*, 19 F.3d at 618. This Court held in *Kubini* that it lacked supervisory authority to review actions undertaken by the prosecutor before the grand jury that allegedly violated the U.S. Attorney's Manual, the Federal Rules of Evidence, and the Rules of Professional Conduct. *Id.* at 618-25. Further, courts encountering a defendant claiming that he was prejudiced by alleged erroneous legal instructions provided by the prosecutor to a grand jury have rejected the argument, finding that *prosecutors are not even obligated to provide legal instructions to the grand jury*.[2] *See e.g., United States v. Lopez-Lopez*, 282 F.3d 1, 9 (1st Cir. 2002) ("[U]nder federal law the prosecutor is not obligated to provide legal instruction to the grand jury."); *United States v. Zangger*, 848 F.2d 923, 925 (8th Cir. 1988) ("The prosecutor is under no obligation to give the grand jury legal instructions.").

Here, even if Defendant's argument as to the applicability of *Elonis* to the § 871(a) charge in this case was accepted – an issue this Court expressly declines to consider at this time for reasons set forth below – he has not even argued that the prosecutor committed any misconduct before the grand jury. Indeed, Defendant admits, as he must, that *Elonis* was not decided by the Supreme Court before the grand jury made its decision to indict him on December 16, 2014 and also concedes that he believes the prosecutor provided legal instructions to the grand jury that were wholly consistent with the most recent decision by the Third Circuit at that time, i.e., *Kosma*. (*See* Docket No. 41 at 2-3).[3]

---

[2] Several treatises echo these decisions. *See e.g.*, Wayne R. LaFave et al., *Criminal Procedure*, 4 Crim. Proc. § 15.6(b) (4th ed. 2015) ("Arguably [*Williams*] also suggests that there is no right to a grand jury deliberation that is free from excesses of advocacy by the prosecutor or erroneous instructions on the law."); Susan W. Brenner, et al., *Federal Grand Jury: A Guide to Law and Practice*, 1 Fed. Grand Jury § 6:4 (2d ed.) (It is "extraordinarily unlikely that a court will dismiss an indictment because a prosecutor failed to instruct the grand jury on an element of an offense and/or on a lesser included offense.")

[3] Defendant specifically argues the following:
> At the time Mr. Segura was charged in this case, it was unclear whether 18 U.S.C. § 871 included an element of subjective intent – that the defendant intended his communication as a threat, or had knowledge that it would be taken as such. It was not until the Supreme Court decided *Elonis v. United States*, __

Of course, a necessary prerequisite to demonstrate that the legal instructions provided by the prosecutor to the grand jury were erroneous, if any were given, would be for the defendant to obtain the grand jury transcripts and present them to the Court. But, "[b]ecause grand jury proceedings are entitled to a strong presumption of regularity, a defendant seeking disclosure of grand jury information under Rule 6(e)(3)(E)(ii) 'bears the heavy burden of establishing that particularized and factually based grounds exist to support the proposition that irregularities in the grand jury proceedings may create a basis for dismissal of the indictment.'" *United States v. Chalker*, 2013 WL 4547754, at *4 (E.D. Pa. Aug. 27, 2013) (quoting *United States v. Bunty*, 617 F. Supp. 2d 359, 372 (E.D. Pa. 2008)). Defendant has not attempted to meet this "heavy burden" as he has not moved the Court to obtain the grand jury transcripts under Rule 6(e)(3)(E)(ii). (*See generally* Docket Report 14-286). Even if he had, the Court would deny any such motion given the above legal authority.

Accordingly, the Court must deny Defendant's motion to dismiss insofar as he contends that dismissal is warranted due to the prosecutor allegedly providing erroneous legal instructions to the grand jury or that the probable cause determination made by the grand jury in this case lays on an insufficient legal foundation. *See Kaley v. United States*, __ U.S. __, 134 S. Ct. 1090, 1097–98 (2014) (citing *Costello v. United States*, 350 U.S. 359, 362–63 (1956)) (In light of "the grand jury's singular role in finding the probable cause necessary to initiate a prosecution," courts generally lack authority "for looking into and revising" the grand jury's judgment).

The Court next turns to the crux of Defendant's argument which is that "based on the Supreme Court's ruling in *Elonis v. United States*, 135 S. Ct. 2001 (2015), Count One of the

---

        U.S. __, 135 S. Ct. 2001 (2015), on June 1, 2015, that it became the law that the
        *mens rea* of a crime involving the communication of a threat requires proof that
        the defendant made the communication for the purpose of issuing a threat, or
        with knowledge that the communication will be viewed as a threat.
(Docket No. 41 at 2-3 (emphasis added)).

Indictment fails to state an offense due to its silence regarding Mr. Segura's subjective intent to threaten, which *Elonis* decided is an essential element of the offense." (Docket No. 51 at 2-3). This argument presents two separate questions, only one of which this Court must resolve at the present time. Those questions are: (1) is this particular Indictment silent as to the *mens rea* for the intent to threaten element?; and, (2) does *Elonis* require a subjective intent to threaten in a § 871(a) case? This Court believes that the first question is dispositive and controls the instant motion to dismiss such that the Court expressly declines to address the applicability of the decision in *Elonis* to this case.

Consistent with Rule 7, this Court must interpret the Indictment with regards to the plain, ordinary meaning of the words contained therein and to avoid hyper-technical pleading requirements. *See* FED. R. CRIM. P. 7. Further, as the challenge is to the legal sufficiency of essential elements of the Indictment, the Court looks to general canons of statutory construction, a few of which are helpful in this situation. To this end, in *Flores-Figueroa v. United States*, the Supreme Court held that "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009) (citing *United States v. X–Citement Video, Inc.*, 513 U.S. 64 (1994)). The Supreme Court explained that this canon flows from the application of principles of ordinary English grammar. *Id.* ("As a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime."); ("In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence."). Our Court of Appeals has further reasoned that "when 'willfully'

is used in a criminal statute, and particularly where the term is used in conjunction with 'knowingly,' [ … ] it usually requires the government to prove that the defendant acted 'not merely voluntarily,' but with a 'bad purpose,' that is, with knowledge that his conduct was, in some general sense, 'unlawful.'" *United States v. Starnes*, 583 F.3d 196, 210 (3d Cir. 2009) (quoting *Bryan v. United States*, 524 U.S. 184, 192-93 & n.13, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998)) (further internal quotations omitted).

With these principles in mind, the Court once again turns to the language of this Indictment, which charges as follows:

> [o]n or about September 22, 2014, in the Western District of Pennsylvania, the Defendant, Julio Segura, Jr., did ***knowingly and willfully*** deposit for conveyance in the mail, and for a delivery from a post office and by a letter carrier, a letter, paper, writing, print, missive, and document containing a threat to take the life of, and to inflict bodily harm upon the President of the United States, specifically, a letter which stated "I will hunt you down. I will find you. I will kill you." In violation of Title 18, United States Code, Section 871(a).

(Docket No. 1 (emphasis added)).

In this Court's estimation, the most appropriate ordinary, plain English interpretation of this particular Indictment would lead to the conclusion that the *mens rea* of "knowingly" and "willfully" contained therein would apply to both the first and second clauses of the Indictment. Hence, the Indictment is simply not "silent" with respect to the *mens rea* of the intent to threaten element, as Defendant suggests. Rather, this Indictment, read as a whole and interpreted in plain, ordinary English, charges that Defendant "knowingly and willfully" made "a threat to take the life of, and to inflict bodily harm upon the President of the United States, specifically a letter which stated 'I will hunt you down. I will find you. I will kill you.'" The combination of "knowingly and willfully" suggests that Defendant acted with a "bad purpose" and knowledge that his conduct was "unlawful." *Starnes*, 583 F.3d at 210. As this is the legal standard that

11

Defendant has argued must be included in a facially valid indictment, his motion to dismiss challenging this Indictment for failing to state an essential element of the offense must be denied.

To be clear, this Court's ruling is limited to determining whether this particular Indictment, as pled, should be dismissed under the prevailing legal standard and the arguments presented at this stage of the case. This decision is without prejudice to both the Government and Defendant advocating what they believe to be the essential elements of the § 871(a) offense to be charged to the jury in light of *Kosma* and *Elonis* and any other precedent that they wish to present to the Court. The Court proceeds in this manner because the Supreme Court reached its decision in *Elonis* in the context of the sufficiency of jury instructions and was not reviewing a lower court's decision on a motion to dismiss. *See Elonis*, 135 S. Ct. at 2007-08. As the Government points out, *Elonis* involved a charge under § 875(c), which lacks an explicit *mens rea* for any element and thus has a different statutory structure and language when compared to the offense charged here under § 871(a). *Cf. United States v. Wright-Darrisaw*, 617 F. App'x 107, 108 (2d Cir. 2015) ("In this case, the Supreme Court's holding in *Elonis* does not significantly alter the standard by which we determine whether a threat is a true threat under 18 U.S.C. § 871(a). [ … ] *Elonis* informs our understanding of 18 U.S.C. § 871(a) that the Government will have met its burden if it proves that Wright–Darrisaw's statement was objectively a true threat and that she 'knowingly and willfully' made her statement, intending it to be understood by others to be a true threat."). Moreover, the Court of Appeals has expressly noted that "the *Elonis* court did not reach whether a § 875(c) conviction could be sustained based on recklessness" *United States v. Muniz*, No. 15-1001, --- F. App'x ----, 2016 WL 80630, at *3

(3d Cir. Jan. 7, 2016). In fact, *Elonis* remains before the Court of Appeals on remand from the Supreme Court to address this specific issue.[4]

For all of these reasons, the Court will deny the motion to dismiss. In short, this Indictment provides the essential elements of the offense and a "'sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *Bergrin*, 650 F.3d at 264 (quoting *Rankin*, 870 F.2d at 112). It also appears that Defendant has started to build his defense to this charge given his claim that the statements he made in his letter to the President were merely him "blowing off steam" and consisted of "a quotation of an iconic assertion by Liam Neeson in the popular movie Taken." (Docket No. 41 at 10). This defense, however, cannot be considered via a motion to dismiss.

V. CONCLUSION

Based on the foregoing, Defendant's Motion is DENIED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: April 25, 2016
cc/ecf: All counsel of record.

---

[4] The Court of Appeals' Order establishing a briefing schedule provides that:
> On June 1, 2015, the Supreme Court of the United States reversed the opinion and judgment of this Court and remanded the matter for further proceedings consistent with its opinion. The Supreme Court declined to address whether recklessness suffices for liability under 18 U.S.C. § 875(c).
>
> The Appellant is hereby O R D E R E D to respond in writing within 30 days of the date of this order, to the following:
> 1) Whether recklessness suffices for liability under 18 U.S.C. § 875(c) and, if so, where in the record below the issue was preserved for appellate review;
> 2) whether, assuming that recklessness is sufficient for liability under 18 U.S.C. § 875(c), it is also sufficient for purposes of the First Amendment;
> 3) whether the district court's instruction to apply a negligence standard was harmless error.

The Court of Appeals has set *Elonis* for argument on May 2, 2016.